## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### Roanoke Division

| | | |
|---|---|---|
| **JOYCE BROWN**, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. _____ 7:21cv00438 |
| | : | |
| **AECOM, INC.**, | : | |
| R/A: C T CORPORATION SYSTEM | : | |
| 4701 Cox Rd, Suite 400 | : | |
| Glen Allen, VA 23060 | : | **TRIAL BY JURY DEMANDED** |
| | : | |
| and | : | |
| | : | |
| **Timothy Long**, | : | |
| 62 Rebel Ridge Dr. | : | |
| New Castle, VA 24127 | : | |
| | : | |
| and | : | |
| | : | |
| **Richard McDearmon**, | : | |
| 167 Beech Tree Ln. | : | |
| Callaway, VA 24067 | : | |
| | : | |
| and | : | |
| | : | |
| **Kyle Dobbins**, | : | |
| 1315 Franklin Rd. SW | : | |
| Roanoke, VA 24016 | : | |
| | : | |
| Defendants. | : | |
| | : | |

## COMPLAINT

### (Racial Discrimination)

COMES NOW, the Plaintiff, Joyce Brown ("**Ms. Brown**" or "**Plaintiff**"), by and through

her undersigned counsel and moves this Honorable Court for judgment against the Defendants,

AECOM, Inc. ("**AECOM**"), Timothy Long ("**Mr. Long**"), Richard McDearmon ("**Mr.**

McDearmon"), and Kyle Dobbins ("**Mr. Dobbins**") (collectively, the "**Defendants**") on the grounds and praying for the relief hereinafter set forth:

**Parties**

1.      Plaintiff, Ms. Brown, is, and at all times relevant hereto, a resident of the Commonwealth of Virginia, specifically residing at 3327 Circle Brook Drive, Apartment K, Roanoke, VA 24018.

2.      Defendant, AECOM, is a Delaware corporation, with a principal place of business located at 300 South Grand Avenue, Floor 9, Los Angeles, CA, 90071 – 3135

3.      Defendant Mr. Long is, and at all times relevant hereto, a resident of the Commonwealth of Virginia, specifically residing at 62 Rebel Ridge Dr., New Castle, VA 24127.

4.      Defendant Mr. McDearmon is, and at all times relevant hereto, a resident of the Commonwealth of Virginia, specifically residing at 167 Beech Tree Ln., Callaway, VA 24067.

5.      Defendant Mr. Dobbins is, and at all times relevant hereto, a resident of the Commonwealth of Virginia, specifically residing at 1315 Franklin Rd. SW, Roanoke, VA 24016.

**Jurisdiction and Venue**

6.      This action is brought by Plaintiff for damages on account of Defendant's AECOM's racially discriminatory practices as prohibited by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

7.      This Court has federal question subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 *et seq*.

8.      This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 as Plaintiff's claims are so related to the claims within the Court's original jurisdiction that it forms the part of the same case or controversy.

9.      Venue is proper in the Eastern District of Virginia pursuant to 28 U.S.C. § 1391(b)(1) and (d).

10.     Plaintiff has satisfied all of the procedural and administrative requirements set forth in Section 706 of Title VII, 42 U.S.C. § 2000e-5, in particular:

     a.      On or around October 30, 2020, Plaintiff filed a charge ("**Charge**") with the Virginia Division of Human Rights ("**VDHR**"), Charge No. 438-2020-01588.

     b.      The VDHR subsequently cross-filed the Charge with the United States Equal Employment Opportunity Commission ("**EEOC**"), Charge No. 570-2016-00956, under the agencies' work sharing agreement.

     c.      As such, the Charge was timely filed with the EEOC within three hundred (300) days from the latest date of discrimination relative to this matter.

     d.      On May 10, 2021, Plaintiff received a copy of the "Notice of Right to Sue".

     e.      The Complaint in this matter was filed with this Court within ninety (90) days from Plaintiff's receipt of the "Notice of Right to Sue".

## Statement of Facts

11.     Ms. Brown was hired by Defendant AECOM on a temporary basis on September 4, 2018, through a staffing agency, ARL Enterprises, LLC d/b/a Express Employment Professionals ("**Express**") as a Specifications Coordinator with AECOM.

12.     Ms. Brown is an African American woman.

13.     While Ms. Brown worked for Defendant AECOM, Ms. Brown was the first and only African American and the only person of color on her floor and in her department.

14.     On September 4, 2018, Defendant's first day of employment with Defendant

3

AECOM, Defendant Mr. Long, a white male, approached Ms. Brown's Desk, introduced himself, and stated that Ms. Brown's work provided laptop "traveled all the way from Africa". Defendant Mr. Long told Ms. Brown "Can you believe it? Now you are using the laptop."

15.     This joke was objectively racist. It embarrassed and offended Ms. Brown.

16.     Defendant Mr. Long was not reprimanded or suffered any consequences for his racist joke directed towards Ms. Brown.

17.     Defendant Mr. Long continued to make racially charged comments and jokes directed towards Ms. Brown throughout the duration of her employment with Defendant AECOM.

18.     Defendant AECOM did not provide Ms. Brown with adequate training.

19.     Ms. Brown's training consisted of one-on-one training and written materials.

20.     Defendant Mr. Dobbins, Ms. Brown's direct supervisor at the time, assigned Ms. Brown to be trained by Ann Shotwell ("**Ms. Shotwell**"), a Project Manager.

21.     Soon after Ms. Brown's training began, Ms. Shotwell would frequently beg Ms. Brown for money while Ms. Shotwell was supposed to be training Ms. Brown or while Ms. Brown was working, claiming that Ms. Shotwell needed money for various hardships, such as new car tires.

22.     Ms. Shotwell would also beg Ms. Brown for money to buy her lunch. Ms. Shotwell would wait until after the pair had arrived at a restaurant so as to exert pressure on Ms. Brown.

23.     If Ms. Brown expressed hesitation or refused to provide Ms. Shotwell with money, then Ms. Shotwell would engage in discriminatory behavior towards Ms. Brown.

24.     This continued throughout Ms. Brown's employment.

25.     At one point in 2020, Ms Shotwell called Ms. Brown on her work phone and asked for $250.00 to cover groceries and various other expenses as the result of hardships she was facing.

26.     At this point, Ms. Brown flatly refused to provide Ms. Shotwell with any more money henceforth.

27.     Thereafter, Ms. Shotwell would shirk her training obligations of Ms. Brown assigned by Defendant Mr. Dobbins and engage in abusive and derogatory behavior directed towards Ms. Brown.

28.     Ms. Shotwell used her position of authority over Ms. Brown to extort money on a regular basis.

29.     Ms. Brown told Defendant Mr. Dobbins that Ms. Shotwell continually requested money from Ms. Brown, that Ms. Shotwell was derelict in her training obligations, that Ms. Shotwell engaged in discriminatory conduct when Ms. Brown refused to provide her with money, and that she believed Ms. Shotwell was using her position of authority to extort money from her.

30.     Defendant Mr. Dobbins did not reprimand Ms. Shotwell for her conduct or require her to complete her training obligations with respect to Ms. Brown.

31.     Defendant Mr. Dobbins did not provide Ms. Brown with a different trainer.

32.     Defendant Mr. Dobbins only told Ms. Brown to not give Ms. Shotwell any more money.

33.     Despite her inadequate one-on-one training and unsupportive supervisors, Ms. Brown studied the written training materials that she was provided, trained herself to perform work for AECOM and completed all assigned tasks without complaint.

34.     On January 4, 2019, Ms. Brown was offered and accepted a permanent position as a "Construction Tech II/Specifications Coordinator" with Defendant AECOM

35.     In or around November 2019, Ms. Brown presented a PowerPoint regarding the preparation and submission of specifications to Defendant AECOM's project managers, designers,

and architects, including Frank Nottingham ("**Mr. Nottingham**"), a project manager at Defendant AECOM, Elizabeth "Lizzie" Kaster ("**Ms. Kaster**"), an Office Administrator at Defendant AECOM, and Defendant Mr. Dobbins.

36.     During this meeting, Mr. Nottingham, in front of all other participants, said "Joyce shouldn't be the one who was hired coordinate specifications. It should have been Lizzie."

37.     Ms. Kaster apologized to Ms. Brown for Mr. Nottingham's comments.

38.     Defendant Mr. Dobbins did not apologize or indicate that there was anything wrong with Mr. Nottingham's comments.

39.     Rather, Defendant Mr. Dobbins smirked and allowed Mr. Nottingham to continue to humiliate Plaintiff.

40.     After the meeting, Ms. Brown spoke with Defendant Mr. Dobbins regarding Mr. Nottingham's comments.

41.     Ms. Brown expressed her hurt and embarrassment to Defendant Mr. Dobbins for being targeted, singled out, and excluded as the only person of color in a fully Caucasian office.

42.     Ms. Brown explained that she felt her color was an issue and that her credentials were being overlooked.

43.     Defendant Mr. Dobbins was aware that Ms. Brown was in a sensitive position as the only person of color in the office.

44.     Nevertheless, Defendant Mr. Dobbins did not attempt to reprimand Mr. Nottingham or condemn Mr. Nottingham's words or actions.

45.     Rather, Defendant Mr. Dobbins just told Ms. Brown, "You need to get a tough skin!"

46.     Ms. Brown then spoke with Defendant Mr. Dobbins direct supervisor, Joey

Caldwell ("**Mr. Caldwell**") regarding the meeting.

47.     Ms. Brown explained that she felt her color was an issue, that her credentials were being overlooked, and that she was being ignored by her direct supervisor.

48.     Mr. Caldwell did not attempt to reprimand Mr. Nottingham or Defendant Mr. Dobbins or condemn their words or actions.

49.     Mr. Caldwell's only criticized Defendant Mr. Dobbin's job performance because "his numbers are decreasing."

50.     Mr. Caldwell's only words regarding the incident were "Joyce, you are the first black woman in this office and in Roanoke, Virginia to work specifications."

51.     One day, Ms. Brown went to work with her hair pulled into a simple bun.

52.     While Ms. Brown sat at her desk, another employee, Defendant Mr. McDearmon, a white male and an employee at Defendant AECOM, in the presence of others, including Defendant Mr. Dobbins, loudly said to Ms. Brown, "Joyce, your hair looks like you have a bird nest sitting on your head."

53.     These comments severely embarrassed and hurt Ms. Brown, and they were made in front of other employees.

54.     Defendant Mr. Dobbins did not apologize, attempt to reprimand Defendant Mr. McDearmon, or otherwise condemn Defendant Mr. McDearmon's words or actions.

55.     That same day, Defendant Mr. McDearmon, in the presence of Ms. Brown, told Defendant Mr. Dobbins, "I don't know how the document was placed in the wrong folder. Maybe Joyce did it."

56.     Ms. Brown did not incorrectly file the document as alleged because Ms. Brown did not have access to the location where it was filed.

57.     As a result, it is impossible that Ms. Brown incorrectly filed the document as alleged by Defendant Mr. McDearmon.

58.     Ms. Brown felt that Defendant Mr. McDearmon made the hurtful comments regarding her hair and blamed her for incorrectly filing the document because of her race.

59.     Ms. Brown attempted to speak with Defendant Mr. Dobbins to address the racial and performance comments that Defendant Mr. McDearmon made to Defendant Mr. Dobbins.

60.     Defendant Mr. Dobbins told Ms. Brown that he would not speak with her about these issues, including ongoing racial discrimination, stating "Go tell Richard, don't tell me."

61.     Ms. Brown was hurt and severely uncomfortable that she could not speak with her direct supervisor about racial discrimination she was experiencing in the workplace.

62.     Thereafter, Defendant Mr. Dobbins calloused attitude with respect to ongoing racial discrimination spread to the rest of the office, including the project managers, architects, and designers.

63.     The project managers frequently ignored deadlines and other requirements for specifications established by Ms. Brown and explained by her during her PowerPoint presentation.

64.     Ms. Brown would frequently have to work 12-15 hour days in order to turnaround late submissions from project managers whose attitude and conduct towards Plaintiff deteriorated as the discrimination and other bad conduct by other employees directed towards Plaintiff and condoned by Defendant AECOM increased.

65.     Ms. Brown attempted to correct these issues by speaking with the project managers, Defendant Mr. Dobbins, and other employees; but nothing changed.

66.     Project managers did not ignore and treat previous specification managers or other white employees this way; only Ms. Brown.

67.     Project managers and other did not behave in this manner before Defendant Mr. McDearmon made the racially charged comments about Ms. Brown's appearance and lied about Ms. Brown's work performance.

68.     Ms. Brown believed this conduct was racially motivated, but her direct supervisor Defendant Mr. Dobbins was completely disinterested in investigating or stopping the racial discrimination.

69.     Defendant AECOM was well aware of the racial discrimination caused by management and employees directed towards Ms. Brown.

70.     In or around June 2019, Ms. Kaster stood up in the middle of the floor and stated to all of the other employees, "We all know why Joyce is being treated like this and this a lot to do with her color."

71.     Ms. Kaster stated further, "No other Specification Coordinators have ever been treated like this."

72.     Again, nothing changed after Ms. Kaster spoke up on Ms. Brown's behalf.

73.     Defendant Mr. Dobbins did not investigate or take Ms. Brown's allegations of racial discrimination seriously after Ms. Kaster spoke up on Ms. Brown's behalf.

74.     In or about March 2020, Defendant Mr. Long, a white male, made another, inappropriate racial joke at Ms. Brown's expense.

75.     In the presence of several other white males, in front of Ms. Brown's desk, Defendant Mr. Long told Ms. Brown directly that he refused to eat any African food when he visited Africa because Africans "wipe their ass with their left hand and eat with their left hand."

76.     All of the white men around Ms. Brown's desk laughed at Defendant Mr. Long's comments and at Ms. Brown's expense.

77.     Defendant Mr. Long told Ms. Brown that "this why Africans stay sick all the time and that Africans were not clean people".

78.     As the result of the racial discrimination Ms. Brown suffered while working for Defendant AECOM, Ms. Brown developed anxiety issues.

79.     The anxiety Ms. Brown experienced was so severe it would cause physical pains, such as stomach aches, before she arrived at work each morning.

80.     Nevertheless, Ms. Brown excelled at her job.

81.     Ms. Brown had zero errors in her submitted reports, successfully completed all of her projects, and never received any negative written notices, warning or disciplinary actions.

82.     In June 2020, Jodi Long, ("**Ms. Long**"), a white, female AECOM employee, who was the wife of Mr. Long, a white male, was hired by Defendant AECOM as a Quality Control.

83.     Ms. Long's duties were narrow in scope and consisted of duties such as double checking certain aspects of specification and adjusting formatting of specification before final drafts were submitted.

84.     Ms. Long was essentially hired as backup for Ms. Brown and other employees.

85.     Ms. Long's position was subordinate to Ms. Brown's.

86.     Ms. Brown helped train Ms. Long in the performance of her duties.

87.     On September 16, 2020, Ms. Brown met with Joey Caldwell ("**Mr. Caldwell**"), Area Vice President and Operations Management for Defendant AECOM, a white male, Rebecca Devivio ("**Ms. Devivio**"), the Human Resource Manager, a white female, and Defendant Mr. Dobbins, a white male.

88.     Ms. Brown asked Defendant Mr. Dobbins prior to the meeting if he knew what the meeting was about, and he said that did not.

89.     However, in the meeting, Defendant Mr. Dobbins told Ms. Brown that her position had been eliminated, that her duties were no longer needed by Defendant AECOM, that her currently assigned task would not be used by Defendant AECOM, and that she would be discharged on October 2, 2020.

90.     Defendant Mr. Dobbins later reiterated this information on a phone call with Ms. Brown on the same day.

91.     At the time of Plaintiff's termination, she was earning $21.86 per hour and working approximately 40 hours per week.

92.     A few days after Plaintiff was terminated, Defendant Mr. Dobbins told Ms. Brown that her termination was actually the result of a Reduction in Force.

93.     Prior to her termination, including at the September 16, 2020, meeting, Ms. Brown was not informed that any such Reduction in Force measure was actually taking place.

94.     Ms. Brown was never provided with any documentation informing her that her termination was actually part of a Reduction in Force.

95.     In actuality, Ms. Brown's duties were not eliminated and her currently assigned task was used by Defendant AECOM.

96.     On or about September 21, 2020, Ms. Brown was informed by another AECOM employee that her duties and current tasks were given to Ms. Long, a white female.

97.     Ms. Brown's duties and her then assigned tasks were effectively transferred to Ms. Long.

98.     Ms. Brown did not have any performance issues and did not receive any informal coaching prior to her termination.

99.     No prior written notices, warnings or disciplinary actions were ever taken prior to

her termination.

100.    Ms. Brown only received one official performance appraisal prior to her termination, and she received a positive rating.

101.    Ms. Brown has been unable, despite reasonable efforts, to find comparable employment since her termination with AECOM.

## COUNT I
### Racial Discrimination in Violation
### of Title VII of the Civil Rights Act of 1964, as amended
### Against Defendant AECOM

102.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

103.    Plaintiff is an African American female.

104.    On September 16, 2020, Ms. Brown was informed by Mr. Caldwell, Ms. Devivio, and Defendant Mr. Dobbins, that Defendant AECOM was eliminating Ms. Brown's duties and active tasks in the Roanoke office.

105.    After Ms. Brown's termination, Ms. Brown's duties and active tasks were actually transferred to Ms. Long.

106.    At the time of Ms. Brown's termination Ms. Long had less experience in Ms. Brown's role than Ms. Brown.

107.    Ms. Long is the wife of Defendant Mr. Long, a white male employee at Defendant AECOM, who targeted Ms. Brown with various forms of racial harassment and discrimination from her very first day of employment at Defendant AECOM.

108.    By its acts and omissions alleged herein, Defendant AECOM intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status

as an employee on the basis of Plaintiff's race, in violation of 29 U.S.C §2000e-2(a)(1).

109.    As a direct and foreseeable result of Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, all to his damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

110.    As a direct, foreseeable, and proximate result of Defendant's unlawful conduct, Plaintiff has been injured in that he has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

111.    In acting as alleged herein, Defendant has acted maliciously, fraudulently, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendant in amounts to be proved at trial.

112.    As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit.

## COUNT II
### Racial Discrimination in Violation of
### 42 U.S.C. § 1981 Against Defendant AECOM

113.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

114.    Plaintiff is an African American female.

115.    September 16, 2020, Ms. Brown was informed by Mr. Caldwell, Ms. Devivio, and

Defendant Mr. Dobbins, that Defendant AECOM was eliminating Ms. Brown's duties and active tasks in the Roanoke office.

116.    After Ms. Brown's termination, Ms. Brown's duties and active tasks were actually transferred to Ms. Long.

117.    At the time of Ms. Brown's termination Ms. Long had less experience in Ms. Brown's role than Ms. Brown.

118.    Ms. Long is the wife of Defendant Mr. Long, a white male employee at Defendant AECOM, who targeted Ms. Brown with various forms of racial harassment and discrimination from her very first day at Defendant AECOM.

119.    Defendant AECOM lied to Plaintiff when it told Plaintiff that her duties and active tasks were no longer needed at AECOM's Roanoke location.

120.    Plaintiff's duties and active tasks actually were transferred to her white replacement, Ms. Long after Plaintiff's termination.

121.    Defendant AECOM lied to Plaintiff when it alleged that Plaintiff was terminated as the result of a Reduction in Force measure.

122.    Defendant AECOM provided no proof to Plaintiff a Reduction in Force measure was in place at the time of Plaintiff's termination.

123.    Defendant AECOM provided no proof to Plaintiff that Plaintiff's termination from Defendant AECOM was based on any other legitimate reason, such as poor performance.

124.    Plaintiff's race was a motivating factor in Plaintiff's termination from Defendant AECOM.

125.    Defendant AECOM terminated Plaintiff from Defendant AECOM so that Defendant AECOM could replace Plaintiff with a white employee, Ms. Long, the wife of

Defendant Mr. Long, one of the primary Defendant AECOM employees who racially targeted and harassed Plaintiff.

126.    But for Plaintiff's race, Defendant AECOM would not have engaged in the unlawful conduct alleged herein.

127.    By its acts and omissions alleged herein, Defendant AECOM intentionally deprived Plaintiff of equal employment opportunities, and otherwise adversely affected her status as an employee on the basis of Plaintiff's race, in violation of in violation of 42 U.S.C §1981 *et seq*.

128.    As a direct and foreseeable result of Defendant AECOMS's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

129.    As a direct, foreseeable, and proximate result of Defendant AECOM's unlawful conduct, Plaintiff has been injured in that she has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

130.    In acting as alleged herein, Defendant AECOM has acted maliciously, fraudulently, despicably, and oppressively, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Plaintiff is entitled to recover punitive damages from Defendant AECOM in amounts to be proved at trial.

131.    As a result of Defendant's acts of discrimination as alleged herein, Plaintiff is

entitled to reasonable attorney's fees and costs of suit as provided for by 42 U.S.C §1988(b).

## COUNT III
### Intentional Infliction of Emotional Distress against
### Defendants AECOM, Mr. Long, and Mr. McDearmon

132.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

133.    By its acts and omissions alleged herein, Defendant AECOM allowed its employees to engage in repeated, targeted, and racially motivated unlawful conduct directed at Plaintiff while Plaintiff was employed by Defendant AECOM.

134.    Defendant AECOM failed to correct the racially discriminatory behavior of its white employees, even after it was reported by Plaintiff to her supervisor, her supervisor's supervisor, and anyone else she believed would listen.

135.    Defendants Mr. Long and Mr. McDearmon are white male employees of Defendant AECOM.

136.    Defendants Mr. Long and Mr. McDearmon intentionally engaged in numerous instances of targeted racial discrimination in the form of racial jokes directed at Plaintiff in full view of other AECOM employees, as alleged herein.

137.    Defendants Mr. Long and Mr. McDearmon's discriminatory conduct started on the first day of Plaintiff's employment with AECOM through Express and lasted throughout her employment until her unlawful termination.

138.    Defendants Mr. Long and Mr. McDearmon wanted Plaintiff to either quit or be terminated from AECOM so that they could maintain an all-white workplace.

139.    Defendant Mr. Long also wanted Plaintiff to either quit or be terminated so that

his wife could be hired in Defendant's place.

140.    Defendants Mr. Long and Mr. McDearmon's discriminatory conduct was intentional and lasted throughout the term of Plaintiff's employment with Defendant AECOM, a period of over two years.

141.    Defendants AECOM, Mr. Long, and Mr. McDearmon's conduct was so egregious that Ms. Kaster felt the need to informally address all of the AECOM staff during the workday and inform them that it was apparent Plaintiff's treatment occurred as the result of her race.

142.    Defendants Mr. Long and Mr. McDearmon were not reprimanded for his conduct by Defendant AECOM, despite repeated pleas by Defendant to her supervisor, Defendant Mr. Dobbins and his supervisor, Mr. Caldwell.

143.    No reasonable person could be expected to endure daily, targeted racial attacks that were condoned her superiors and made publicly in front of her coworkers.

144.    As a result, Defendants AECOM, Mr. Long, and Mr. McDearmon's conduct was extreme and outrageous.

145.    Defendants AECOM, Mr. Long, and Mr. McDearmon's wrongful conduct caused Plaintiff to suffer emotional distress on a daily basis.

146.    As the result of Defendants AECOM, Mr. Long, and Mr. McDearmon's conduct, Plaintiff developed mental issues, such as severe anxiety.

147.    The impact of the conduct was magnified because Plaintiff lost the respect of several other employees, such as project managers.

148.    After witnessing Plaintiff suffer and Defendants AECOM, Mr. Long, and Mr. McDearmon either cause or condoning the discriminatory acts or omissions alleged herein, employees would disrespect Plaintiff by turning in work late, resulting in Plaintiff having to

endure severe "crunch" time of up to 15 hour days so that AECOM's products and services could be supplied on time.

149.    Before work, Plaintiff would have to wait in her car and mentally prepare herself each day for untold abuse for unknown reasons.

150.    Plaintiff's abuse was predicated on her skin color.

151.    Plaintiff also developed symptoms and manifestations of physical injury incurred as the result of her emotional distress, including but not limited to highly elevated blood pressure levels.

152.    As a result, Plaintiff's emotional distress was severe.

153.    As a direct, foreseeable, and proximate result of Defendants AECOM, Mr. Long, and Mr. McDearmon's unlawful conduct, Plaintiff has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

154.    As a direct, foreseeable, and proximate result of Defendants AECOM, Mr. Long, and Mr. McDearmon's unlawful conduct, Plaintiff has been injured in that she has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

155.    The aforementioned acts of Defendants AECOM, Mr. Long, and Mr. McDearmon were willful, wanton, malicious, and intentional, and also justify the awarding of punitive damages to Plaintiff in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1.

### COUNT IV
### Negligent Infliction of Emotional Distress against
### All Defendants

156.    Plaintiff hereby incorporates by reference and re-alleges each of the allegations contained in all preceding paragraphs of this Complaint with the same force and vigor as if set out here in full.

157.    If the conduct of Defendants AECOM, Mr. Long, and Mr. McDearmon alleged in Count III was not intentional or reckless, then it was negligent.

158.    Defendants AECOM, Mr. Dobbins, Mr. Long, and Mr. McDearmon by virtue of their relationship to Plaintiff, owed her a duty of care to not cause Plaintiff harm.

159.    Defendant AECOM was Plaintiff's employer for over two years, and during that time, owed Plaintiff a duty of care to not racially discriminate or otherwise cause harm, including emotional distress, to its employees, including Plaintiff.

160.    Defendants Mr. Dobbins, Mr. Long, and Mr. McDearmon were coworkers of Plaintiff while she was employed by Defendant AECOM and owed a duty of care to not racially discriminate or otherwise cause harm, including emotional distress, to their fellow coworkers.

161.    Defendant AECOM breached its duty, by its acts and omissions alleged herein, when it allowed Defendants Mr. Long and Mr. McDearmon to make repeated and targeted racially discriminatory conduct, including racist jokes, directed towards Plaintiff on an ongoing basis throughout the term of Plaintiff's employment.

162.    Defendants Mr. Long and Mr. McDearmon breached their duty to Plaintiff when they directly engaged in racially discriminatory conduct, including racist jokes, directed towards Plaintiff on an ongoing basis throughout the term of Plaintiff's employment.

163.    Defendant Mr. Dobbins breached his duty to Plaintiff when he ignored Plaintiff's repeated attempts to stop the racially discriminatory conduct, including racist jokes, by other employees, including Mr. Long and Mr. McDearmon, directed towards Plaintiff on an ongoing

basis throughout the term of Plaintiff's employment.

164.    No reasonable person could be expected to endure daily, targeted racial attacks, especially those that were condoned by Defendant AECOM and Mr. Dobbins and made publicly in front of her coworkers.

165.    As a result, Defendants' conduct was extreme and outrageous.

166.    As a result, Defendants' wrongful conduct caused Plaintiff to suffer emotional distress on a daily basis.

167.    As the result of As a result, Defendants' conduct, Plaintiff developed mental issues, such as severe anxiety.

168.    The impact of the conduct was magnified because Plaintiff lost the respect of several other employees, such as project managers.

169.    After witnessing Plaintiff suffer and Defendants either cause or condoning the discriminatory acts or omissions alleged herein, employees would disrespect Plaintiff by turning in work late, resulting in Plaintiff having to endure severe "crunch" time of up to 15 hour days so that AECOM's products and services could be supplied on time.

170.    Before work, Plaintiff would have to wait in her car and mentally prepare herself each day for untold abuse for unknown reasons.

171.    Plaintiff's abuse was predicated on her skin color.

172.    Plaintiff also developed symptoms and manifestations of physical injury incurred as the result of her emotional distress, including but not limited to highly elevated blood pressure levels.

173.    As a result, Plaintiff's emotional distress was severe.

174.    As a direct, foreseeable, and proximate of Defendants' unlawful conduct, Plaintiff

has suffered, and will continue to suffer, generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress, all to her damage, in amounts within the jurisdictional limits of this Court, to be proved at trial.

175.    As a direct, foreseeable, and proximate result of Defendants' unlawful conduct, Plaintiff has been injured in that she has suffered, and will continue to suffer, a loss of wages and salary, bonuses, compensation, employment benefits, career path opportunities, and expenses, in an amount to be proven at trial.

176.    The aforementioned acts of Defendants were willful, wanton, malicious, and intentional, and also justify the awarding of punitive damages to Plaintiff in the amount of $350,000.00 pursuant to Va. Code § 8.01-38.1.

## CONCLUSION

WHEREFORE, the premises considered, Plaintiff respectfully prays that this Honorable Court:

A.    Enter judgment on her behalf against Defendants;

B.    Award Plaintiff compensatory damages;

C.    Award Plaintiff her court costs, expenses, attorneys' fees, pre-judgment interest and post-judgement interest, as applicable;

D.    Declare that Defendant's conduct is in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, as applicable;

E.    Order that Defendants be required to promulgate an effective policy against such discrimination and to adhere thereto;

F.    Award Plaintiff punitive damages due to Defendant's willful and wanton conduct;

and

G.    Grant such other relief as this Court may consider just and proper.

## DEMAND FOR JURY TRIAL

In accordance with F.R.C.P. 38(b), Plaintiff demands a trial by jury of the within action, including the complaint, and any further pleadings.

Date: August 5, 2021                          Respectfully submitted,

JOYCE BROWN,


By: /s/    Steven Anderson
      Robert Powers, Esq. (VSB No. 80822)
      Steven Anderson, Esq. (VSB No. 93037)
      MCCLANAHAN POWERS, PLLC
      8133 Leesburg Pike, Suite 130
      Vienna, VA 22182
      Telephone: (703) 520-1326
      Facsimile:  (703) 828-0205
      Email: rpowers@mcplegal.com
                  sanderson@mcplegal.com
      *Counsel for Plaintiff*

## CERTIFICATE OF TRANSMISSION

I hereby certify that the forgoing COMPLAINT is being electronically transmitted on the date noted below via the CM/ECF system of the U.S. District Court for the Eastern District of Virginia at https://ecf.vaed.uscourts.gov/. The requisite filing fee of $400.00 and any additional fees related to this matter are being charged to an American Express credit card concurrently with this filing.

Date: August 5, 2021                    By: /s/    Steven Anderson
                                              Steven Anderson, Esq.
                                              One of the Attorneys for Plaintiff

22