IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JOYCE BROWN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:21-cv-00438 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| AECOM, INC. *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Plaintiff Joyce Brown sued Defendants AECOM, Inc. ("AECOM"), Timothy Long, Richard McDearmon, and Kyle Dobbins (collectively "Defendants"), alleging they discriminated against her in the workplace and ultimately fired her because she is black. Brown brings a Title VII racial discrimination claim (Count I) and a claim under 42 U.S.C. § 1981 alleging racial discrimination (Count II) against AECOM. She also brings an intentional infliction of emotional distress claim against AECOM, Long, and McDearmon (Count III). Finally, Brown alleges negligent infliction of emotional distress by all Defendants (Count IV). Defendants moved to dismiss all four claims. (ECF No. 12.) For the reasons that follow, the court will grant Defendants' motion as to Brown's emotional distress claims, but deny the motion as to Brown's racial discrimination claims.

I.   **BACKGROUND**

On September 4, 2018, AECOM, an international engineering firm, hired Brown through a staffing agency to work as a "Specifications Coordinator" on a temporary basis. (Am. Compl. ¶ 11 [ECF No. 10].) Brown is black. (*Id.* ¶ 12.) She was the first and only black person and the only person of color to work in her department. (*Id.* ¶ 13.) On her first day at

AECOM, Long (a white male coworker) stated that Brown's work laptop had "traveled all the way from Africa," and then said "Can you believe it? Now you are using the laptop." (*Id.* ¶ 14.) Brown was embarrassed and offended by the comment. (*Id.* ¶ 15.) Long allegedly made similar racially charged comments and jokes towards Brown throughout her employment. (*Id.* ¶ 17.)

On January 4, 2019, AECOM offered Brown a permanent position as a Specifications Coordinator, which she accepted. (*Id.* ¶ 34.) Several months later, while Brown was giving a presentation to AECOM's project managers, one of the managers interjected, "Joyce [Brown] shouldn't be the one who was hired [to] coordinate specifications. It should have been Lizzie [Kaster]." (*Id.* ¶ 36.) Kaster is an office administrator for AECOM. (*Id.* ¶ 35.) Dobbins, Brown's direct supervisor, was present during this presentation and overheard the remarks; he allegedly "smirked" in reply and "allowed [the manager] to continue to humiliate [Brown]." (*Id.* ¶ 39.) Brown later confronted Dobbins about this incident, told him that she felt "targeted, singled out, and excluded as the only person of color" in the office, and expressed her belief that coworkers overlooked her credentials because of her race. (*Id.* ¶¶ 40–42.) Dobbins responded, "You need to get a tough skin!" (*Id.* ¶ 45.) When Brown raised her concerns about the incident and Dobbins's lack of response with Dobbins's supervisor, he remarked, "Joyce, you are the first black woman in this office and in Roanoke, Virginia to work specifications." (*Id.* ¶¶ 46–50.)

On another occasion, Brown wore her hair in a bun at work. (*Id.* ¶ 51.) McDearmon, another white male coworker, told her, "Joyce, your hair looks like you have a bird nest sitting on your head," in the presence of other AECOM employees, including Dobbins. (*Id.* ¶ 52.) That same day, McDearmon commented to Dobbins that Brown had probably placed a

document in the wrong folder, even though she did not have access to the place where the document was stored. (*Id.* ¶¶ 55–56.) Brown felt that these comments were "hurtful" and made "because of her race." (*Id.* ¶ 58.) When she tried to address these comments with Dobbins, he would not engage and told her to talk to McDearmon instead. (*Id.* ¶¶ 59–60.)

Soon project managers began ignoring the deadlines that Brown had established for specifications. (*Id.* ¶ 63.) To compensate for their tardiness, Brown frequently had to work 12 to 15 hours a day. (*Id.* ¶ 14.) Brown alleges that the project managers' "attitude and conduct towards [her] deteriorated," and "the discrimination and other bad conduct by other employees directed towards [her] and condoned by . . . AECOM increased." (*Id.*) Brown alleges that "[p]roject managers did not ignore and treat previous white specification managers or other white employees this way . . . ." (*Id.* ¶ 66.) Kaster validated Brown's feelings and stated to her fellow employees, "We all know why Joyce is being treated like this and this [is] a lot to do with her color . . . No other Specification Coordinators have ever been treated like this." (*Id.* ¶¶ 70–71.) All Specification Coordinators prior to Brown were apparently white. (*Id.* ¶ 72.)

Kaster's supportive remarks did not lead to substantial changes in Brown's workplace environment. One day Long made an "inappropriate racial joke at . . . Brown's expense." (*Id.* ¶ 76.) He told her, in front of other white, male employees, that he "refused to eat any African food when he visited Africa because Africans 'wipe their ass with their left hand and eat with their left hand.'" (*Id.* ¶ 77.) He said, "this is why Africans stay sick all the time," because they "were not clean people." (*Id.* ¶ 79.)

Brown developed anxiety issues "as a result of the racial discrimination [she] suffered" at work. (*Id.* ¶ 80.) Despite this, she performed her job functions successfully and did not

receive any negative feedback or disciplinary actions. (*Id.* ¶¶ 82–83.) Brown received a positive rating on the only official performance rating she received while at AECOM. (*Id.* ¶ 102.)

In June 2020, AECOM hired Jodi Long ("Jodi")—a white female who was Defendant Long's wife—to serve essentially as "backup" for Brown and other employees. (*Id.* ¶¶ 84–86.) Brown trained Jodi in the role. (*Id.* ¶ 88.) On September 16, 2020, Dobbins scheduled a meeting between himself, the area vice president of AECOM, a human resources manager, and Brown. (*Id.* ¶ 89.) In that meeting, Dobbins informed Brown "that her position had been eliminated, that her duties were no longer needed by . . . AECOM, that her currently assigned task would not be used by . . . AECOM, and that she would be discharged on October 2, 2020." (*Id.* ¶ 91.) Dobbins told Brown that her firing was "actually the result of a 'Reduction in Force.'" (*Id.* ¶ 94.) But, in September 2020, another AECOM employee informed Brown that her previous job duties had been reassigned to Jodi, who later assumed the Specifications Coordinator position. (*Id.* ¶¶ 97–99.)

Brown sued AECOM, Long, McDearmon, and Dobbins on August 5, 2021, asserting four claims: (1) racial discrimination in violation of Title VII of the Civil Rights Act of 1964 (Count I) against AECOM; (2) racial discrimination in violation of 42 U.S.C. § 1981 (Count II) against AECOM; (3) intentional infliction of emotional distress ("IIED") (Count III) against AECOM, Long, and McDearmon; and (4) negligent infliction of emotional distress ("NIED") (Count IV) against all Defendants. This matter is before the court on Defendants'

motion to dismiss all claims. (ECF No. 12.) The motion was fully briefed by the parties and is ripe for disposition.[1]

## II. STANDARD OF REVIEW

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint does not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

## III. ANALYSIS

### A. Counts I & II: Racial Discrimination under Title VII and 42 U.S.C. § 1981

Brown brings claims of racial discrimination under Title VII and 42 U.S.C. § 1981 against AECOM. Title VII makes it unlawful for an employer "to discharge any individual . . . because of such individual's race, color, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). To succeed on a claim under either Title VII or 42 U.S.C. § 1981, a plaintiff must satisfy the

---

[1] Although the parties scheduled the motion for oral argument, after review of the briefs the court determined that the parties' positions on the law and the facts was adequately presented in their written submissions and that oral argument would not aid the court further.

same elements, so the analysis is the same for both. *See James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 n.1 (4th Cir. 2004).

As both parties note, a plaintiff can establish a claim of discrimination under Title VII either by presenting direct or circumstantial evidence of discriminatory animus, or by proceeding under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 249 (4th Cir. 2015). A plaintiff proves a *prima facie* case under *McDonnell Douglas* "by showing that (1) [s]he is a member of a protected class; (2) [s]he suffered adverse employment action; (3) [s]he was performing [her] job duties at a level that met [her] employer's legitimate expectations at the time of the adverse employment action; and (4) the position remained open or was filled by similarly qualified applicants outside the protected class." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007).

But *McDonnell Douglas* "is an evidentiary standard, not a pleading requirement." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002). What neither party acknowledges is that, "[i]n the context of a Title VII case, 'an employment discrimination plaintiff need not plead a *prima facie* case of discrimination' to survive a motion to dismiss." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020) (quoting *Swierkiewicz*, 534 U.S. at 515). A plaintiff is only "required to allege facts to satisfy the elements of a cause of action created by [the Title VII] statute." *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015). "Requiring a plaintiff to plead a *prima facie* case [under *McDonnell Douglas*] would amount to a 'heightened

pleading standard' that would conflict with Federal Rule of Civil Procedure 8(a)(2)."[2] *Id.* at 584 (quoting *Swierkiewicz*, 534 U.S. at 512).

The proper "inquiry is whether [Brown] alleges facts that plausibly state a violation of Title VII 'above a speculative level.'" *Bing*, 959 F.3d at 617 (quoting *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010)). Brown must "plead[] actual facts to support a claim of racial discrimination" and not facts that lead only to "speculation as to [Defendant's] motivation." *Id.* at 618. Brown satisfies this pleading standard.

Brown alleges that Long and McDearmon repeatedly made racially charged jokes and comments—including about her physical appearance—during her employment with AECOM. She expressed her concerns to her direct supervisor, Dobbins, on at least two occasions, but he was unwilling to discuss her concerns and told her to get "tough skin." (Am. Compl. ¶ 45.) Dobbins's supervisor was similarly dismissive of Brown's concerns, choosing instead to emphasize to her that she was the "first black woman in this office and in Roanoke, Virginia" to work in her position. (*Id.* ¶ 50.)

Brown alleges that, throughout her employment, she performed her work satisfactorily, never received disciplinary action or negative feedback, and received a positive rating on the only performance review conducted while she was employed. But allegedly project managers ignored the various deadlines Brown imposed—in a way that they did not with white individuals who previously held her position—causing Brown to work over 12 to 15 hours a

---

[2] In other words, the *McDonnell Douglas* framework typically comes into play, if at all, at the summary judgment stage, based on the evidence developed in discovery. At the pleadings stage, a Title VII plaintiff may not know whether she will seek to establish discrimination based on direct or circumstantial evidence, or through *McDonnell-Douglas* (or both). Thus, a Title VII plaintiff need only allege sufficient facts that plausibly support a legal claim of unlawful discrimination based on the plain language of the statute itself.

day to compensate. This discriminatory treatment was apparently severe enough to prompt Kaster to speak up for Brown in front of their fellow employees and say, "We all know why Joyce is being treated like this and this [is] a lot to do with her color . . . No other Specification Coordinators have ever been treated like this." (*Id.* ¶¶ 70–71.)

A few months before Brown was fired, AECOM hired Jodi as "back up." (*Id.* ¶ 86.) When AECOM eventually fired Brown, Dobbins told her that her job duties were no longer needed at the company. In fact, her duties were reassigned to Jodi, a white female who had less experience in the role than Brown.

Brown presents a similar, but stronger, case for race discrimination as compared to the plaintiff in the recent case of *Ashanti v. City of Richmond School Board*, where the district court also denied the defendant's motion to dismiss. No. 3:21cv494, 2021 WL 5755336, at *4 (E.D. Va. Dec. 3, 2021). In that case, the plaintiff, a black preschool teacher, alleged that the school treated her white instructional assistant as the lead teacher for her class. *Id.* at *1. The school accepted lesson plans from the instructional assistant rather than the plaintiff, and allowed the assistant to regularly contact parents as the teacher. *Id.* The school principal also disciplined the plaintiff based on an allegedly false accusation by a parent. *Id.* When the plaintiff protested the discipline, the principal reported her to Human Resources and accused her of "behav[ing] aggressively." *Id.* At the end of the school year, the district did not renew the plaintiff's teaching contract. *Id.* The district court held that the plaintiff's complaint asserted a "plausible case that [the school] violated Title VII," and denied the defendant's motion to dismiss. *Id.* at *4.

Brown's allegations resemble Ashanti's, in that a subordinate, white employee assumed her job responsibilities. *See id.* at *1. But Brown provides additional factual allegations of

racially charged jokes and commentary made by her fellow employees, at times in the presence of her supervisor, Dobbins. Brown alleges a coworker spoke up on her behalf to address the discrimination Brown faced at work. She also alleges that her supervisor falsely represented to her that she was being fired because her job duties were no longer needed. All of these allegations support a plausible inference that Brown was fired because of her race. *Cf. McCleary-Evans*, 780 F.3d at 588 (affirming district court's grant of a motion to dismiss where plaintiff alleged that defendant did not hire her because of her race but failed to allege that the white individuals the defendant hired were less-qualified for the position); *Bing*, 959 F.3d at 617 (affirming district court's grant of a motion to dismiss where plaintiff's allegations showed his employment was terminated because of his connection to a violent crime, not his race). For these reasons the court should deny AECOM's motion to dismiss on Counts I and II.

**B. Count III: Intentional Infliction of Emotional Distress ("IIED")**

Brown brings a claim for intentional infliction of emotional distress ("IIED") against AECOM, Long, and McDearmon. "To establish a claim for [IIED], a plaintiff must plead that: (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous or intolerable; (3) there was a causal connection between the wrongdoer's conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe." *Nixon v. Kysela Pere Et Fils, Ltd.*, 5:21cv11, 2021 WL 1996063, at *6 (W.D. Va. May 18, 2021) (citing *Almy v. Grisham*, 639 S.E.2d 182, 186 (Va. 2007)). IIED is generally disfavored in the law. *See id.* (citing *Almy*, 639 S.E.2d at 187).

Defendants argue that Brown does not allege conduct that is "so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be

regarded as atrocious and utterly intolerable in a civilized community." *See Russo v. White*, 400 S.E.2d 160, 162 (1991). Brown concedes that "Virginia courts have held that 'insensitive and demeaning conduct,' including verbal abuse, does not rise to the level of extreme or outrageous conduct required to state a claim for [IIED]." *See Perk v. Worden*, 475 F. Supp. 2d 565, 570 (E.D. Va. 2007) (citing *Harris v. Kreutzer*, 624 S.E.2d 24, 34 (2006)). Brown argues that claims of racial animus, however, should be submitted to the jury. But she cites no case law for this proposition outside of the generally applicable rule that where reasonable people can differ, a jury should decide whether conduct is extreme or outrageous. (Pl's Br. in Opp'n Mot. to Dismiss at 7 [ECF No. 13] (citing *Perk*, 475 F. Supp. 2d at 570).)

The Supreme Court of Virginia has held that a court must determine, "in the first instance, whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974). And Virginia sets a high bar for the type of conduct that is abhorrent enough to warrant recovery. *See, e.g.*, *Webb v. Baxter Healthcare Corp.*, No. 94-1784, 1995 WL 352485, at *5–6 (4th Cir. Jan. 30, 1995) (concluding that plaintiff's allegations that she was repeatedly ridiculed based on her sex and ethnicity, including the comment such as "You Jews are all alike," were insufficient to state a claim for IIED under Virginia law); *Coles v. Carilion Clinic*, 894 F. Supp. 2d 783, 796–97 (W.D. Va. 2012) (granting a motion to dismiss plaintiff's IIED claim that was premised on defendant's use of "racially abusive language and symbols and . . . persistence in refusing to promote [the plaintiff] while electing to promote while males instead"); *White v. Ocean Duchess, Inc.*, No. 2:07cv300, 2007 WL 4874709, at *5–6 (E.D. Va. Nov. 7, 2007) (finding that

"[p]laintiffs' allegations of racial slurs and termination based on race fall woefully short of meeting the requisite level of outrageous conduct necessary to state a claim for [IIED]").

Brown's allegations are similar in severity as the above-cited cases. Her allegations consist almost entirely of odious insults and racially charged jokes. Long and McDearmon apparently made several racially insensitive and offensive comments in Brown's presence and directly to her during her employment with AECOM. To be sure, the behavior Brown endured "violate[s] contemporary standards of appropriate behavior in the workplace," but the court cannot conclude that these comments are "an atrocity or utterly intolerable in a civilized society." *See Webb*, 1995 WL 352485, at *6, 17 ("[O]nly the execrable conduct can give rise to the tort."). For these reasons, the court will grant Defendants' motion to dismiss as to Count III.

### C. Count IV: Negligent Infliction of Emotional Distress ("NIED")

Brown also brings a claim for negligent infliction of emotional distress ("NIED") against all Defendants. This claim also fails. "Like IIED claims, [NIED] claims are also disfavored in Virginia." *Burnopp v. Carter Bank & Trust*, 4:20cv52, 2020 WL 6875037, at *3 (W.D. Va. Nov. 23, 2020). A plaintiff must plead "sufficient facts to demonstrate that the plaintiff suffered a physical injury that was 'the natural result of fright or shock proximately caused by the defendant's negligence.'" *Id.* Allegations purely of "underlying emotional disturbance" are insufficient; a plaintiff must allege "evidence of symptoms or manifestations of physical injury." *Id.* (cleaned up). Even when the underlying emotional disturbance creates physical symptoms, Virginia law does not permit recovery under an NIED theory. *See Dao v. Faustin*, 402 F. Supp. 3d 308, 321 (E.D. Va. 2019).

Brown alleges that she experienced "symptoms and manifestations of physical injury incurred as a result of her emotional disturbance, including, but not limited to, highly elevated blood pressure levels." (Am. Compl. ¶ 180.) She also alleges that she "suffered . . . generally physical, mental, and psychological damage in the form of extreme and enduring worry, suffering, pain, humiliation, embarrassment, mental anguish, and emotional distress . . . ." (*Id.* ¶ 184.) These allegations do not evince a physical injury, only symptoms of an underlying emotional disturbance. Accordingly, the court will grant Defendants' motion to dismiss as to Count IV.

## IV. CONCLUSION

For these reasons, the court will deny Defendants' motion to dismiss as to Brown's Title VII and 42 U.S.C. § 1981 claims (Counts I and II), but grant Defendants' motion to dismiss as to Brown's IIED and NIED claims (Counts III and IV). Because no claims remain against Defendants Long, McDearmon, and Dobbins, they will be terminated as parties in this matter.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTERED** this 27th day of January, 2022.

        */s/ Thomas T. Cullen*
        HON. THOMAS T. CULLEN
        UNITED STATES DISTRICT JUDGE